## McPaxton, Ex. vs. Dickson et al.

Where a portion of the heirs and distributees of an estate employ an attorney, to contest the settlement of the executor, the Probate Court has no power to direct the payment of the attorney's fee, by the executor, out of the residuary fund of the estate: if it be a proper case for contribution, by all interested in the estate, the remedy is in chancery only.

*Appeal from Sevier Circuit Court.*

Hon. Shelton Watson, Circuit Judge.

S. H. Hempstead, and B. F. Hempstead, for the appellant. To reverse these proceedings, and set aside this allowance, the appellant relies on the following points:

*First*—Because a court of probate is not invested with chancery jurisdiction; and that, without such ample and discriminating powers, it could not legally make the allowance in question.

*Second*—That, even admitting chancery jurisdiction, still the Court erred, because they had not, by process, or any other mode known to the law, acquired jurisdiction over the parties in interest.

*Third*—Even conceding jurisdiction, and that all persons in interest had been before the Court; still the finding was not warranted under the authority found in 1 *J. Ch. Rep.* 22, as there was no evidence to authorize any such summary interference of the Court in favor of counsel, or the persons employing such counsel.

*Fourth*—The decision is wrong, not only on the ground of public policy, but against one of the prominent principles which govern courts of equity; for, if affirmed, it will produce instead of prevent litigation.

13BB

*Fifth*—Because the decision is in no way final, as to the matters the exceptions filed pretend to settle, as the same matters may be renewed and re-investigated in a court of chancery.

CURRAN & GALLAGHER, for the appellees. The question we shall present in this case is, whether where a distributee incurred a necessary expense, either for costs or solicitor's fees in and about an estate, whereby all the distributees are benefitted, whether he is not entitled to a *pro rata* contribution from the rest of his co-distributees, and whether a solicitor has not a general lien for his costs on the duty recovered by his diligence, and if it is a fund in court, whether the solicitor's lien does not attach to said fund? We think such to be undoubtedly the case. A solicitor has a general lien for his costs on the duty recovered by his diligence. If that is a fund in court, his lien attaches to it, and it will not be paid out without providing for them. 1 *Hoffman's Chancery Practice, page* 34; *Irving vs. Viana,* 2 *Young & Jarvis* 70.

If costs are decreed to be paid by defendants generally, each defendant may be called upon to pay the whole, and the court will enforce contribution among them. 2 *Hoffman's Chancery Practice, p.* 72; 2 *Fowler's Exch. Pr., and case cited, Jones vs. Cawthorne.*

Even a decree or judgment arising upon a matter distinct from them in litigation, cannot be set off to the prejudice of solicitor's lien. *Ib.* 76; *Dunkin vs. Vandenleigh,* 1 *Paige* 624.

The doctrine of contribution is not so much founded on contract, as on the principle of equity and justice, that where the interest is common, the burden also should be common, and the principle that equality of right requires equality of burden. *Campbell vs. Messier,* 4 *John Ch. Rep.* 334.

"In a recent case where, in a creditor's suit, a fund had been realized by the diligence of the plaintiffs, and the assets were more than sufficient for the payment of the debts, the costs of

the plaintiff as between party and party, were ordered to be paid out of the general fund. 2 *Williams on Ex'rs, p.* 1459; *Stanton vs. Halfield,* 1 *Keen* 358.

Mr. Justice Scott delivered the opinion of the Court.

The case presented by this record is, that there being several heirs of John Paxton, deceased, two of them, the appellees herein, feeling dissatisfied with the course of conduct pursued by the executor in the settlement and management of the estate, and desirous to stimulate him to a more strict performance of his duties, to which they allege him derelict, employed counsel who rendered the professional services they required, made out his bill against the parties who employed him, and upon their application the Probate Court ordered it to be paid, by the executor, out of the residuary funds of the estate, and that he credit himself for the sum so paid out, that Court being of the opinion that although these counsel and atttorney's fees had been incurred at the instance of two only of the several distributees, the burthen of their payment ought to be borne in equal proportion by all of them. The nature of the professional services rendered, and so ordered to be paid for out of the estate, will appear, by their specification, in the account made out by the counsellor and attorney, which is as follows:

HANNAH L. DICKSON, BY JOHN DICKSON, HER GUARDIAN, AND JOHN DICKSON, A MUTE, BY JOHN DICKSON, HIS NEXT FRIEND, *To Thomas Hubbard,*                              *Dr.*

1850. For retainer and arguing motion to quash settlement of Jesse McPaxton, as ex'r of the last will and testament of John Paxton, deceased, in the Sevier county court of probate, at the January term, 1850,....................................... $ 50 00

For drawing exceptions to the settlement of the said Jesse McPaxton, as such ex'r, and arguing the same in said court of probate, and obtaining order of said court referring said settlement to an auditor,...... 100 00

For drawing complaint, affidavit, and motion against
said Jesse McPaxton, as such ex'r, and arguing the
same in the court of probate of Sevier county, and
obtaining rule on said Jesse, as such ex'r, to perfect
his bond as such ex'r,........................... 100 00
For attending and arguing exceptions of said Jesse, as
such ex'r, to report of auditor and settlement of ac-
count,........................................ 50 00
For atttending court, and arguing matter of reference
before jury, arising upon exceptions to auditor's report
and settlement of accounts,.................... 50 00

$ 350 00

From this decision of the Probate Court, the executor appealed
to the Circuit Court, all the parties waiving upon the record the
affidavit, and all technicalities and formalities relating to the ap-
peal. The cause was heard there "upon the transcript and bill
of exceptions certified from the Court of Probate," as is stated
in the record of the Circuit Court; no error being found in the
proceedings, opinion and judgment of the Probate Court, they
were in all things affirmed; and the executor appealed to this
Court.

No question was made below, nor is made here, as to whether
or not the professional services in question were rendered, or as
to the reasonableness of the charges made for them; but only as
to whether they were a proper charge upon the residuary fund
of the estate in the hands of the executor undistributed.

Although it might be held that the solicitor has a lien for his
reasonable charges on the duty recovered by his diligence, and if
it be a fund in court, that his lien would attach to the fund, that
would not determine the question involved; because it is not
pretended that the solicitor in this case was retained by all the
persons interested in the fund. The proposition could therefore
establish nothing more than that his lien would attach to the in-
terest of his client only.

The true question is one of contribution simply between parties,

resting not upon contract but upon principles of pure equity; that where the interest is common, the burden should also be common; and that equality of right requires equality of burden. *Campbell vs. Messier*, 4 *John. C. R.* 334.

The probate courts, as regulated in our system, in the main proceed *in rem*, not *inter partes*, otherwise than indirectly in general, although, in particular cases, means are provided by statute, whereby persons interested may come in and become direct and active parties. And consequently, although in its legitimate operations *in rem*, in winding up the estates of deceased persons, and incidentally allowing proper charges against the subject matter of its cognizance, it does, indirectly, work contribution, it does so, not as a principal matter of jurisdiction, but simply as an incidental consequence of its jurisdiction *in rem* in matters of administration. It is mainly in the chancery court that contribution is administered, as a principal head of jurisdiction, after the parties are called in and heard upon the merits of their case. It cannot be pretended that the Legislature has, any where, in express terms, invested such a jurisdiction concurrently in the probate courts: and it is by no means clear that such an act would be constitutional if passed. And it would be but a slight ground upon which to imply such concurrent jurisdiction, that the fund, out of which jurisdiction is sought, is committed by law to the custody, for the time being, of the Probate Court. As well might an individual claim such a jurisdiction because he happened to be the custodian of a like fund, and was authorized to preserve and administer it in a specific manner for the benefit of the parties interested.

In this case, where the Probate Court has attempted to perform the functions of the chancery court, without first calling the parties to be affected before it, that they might be heard, there is no pretence that the burden, which the contribution sought is to lighten, was taken on, either in the ordinary course of administration, or by any party which the law recognizes as a custodian of the estate alleged to have been preserved, or as an agent in

its administration; and hence the claim for contribution rests solely upon grounds of pure equity, and not upon strict law.

Under what provision of the law were these parties authorized to employ attorneys and counsellors, to aid in the administration of the estate? None can be pretended. If employed at the suggestion of their own interests, and the result was favorable not only for themselves, but for others, whose interest was inseparably united with their own, it might be a case to submit to the chancellor to be determined by him upon an equitable claim for contribution; but it made no case for the cognizance of the Probate Court.

We think, therefore, that the judgment of the Circuit Court was erroneous, and it must be reversed, and the cause remanded, with instructions to that Court to sustain the exceptions taken in the Probate Court, and make such decision as that Court ought to have made, in conformity with this opinion.